William Cafaro, Esq.
*Partner*
ADMITTED IN NY, CA, MD & TX
Email: bcafaro@cafaroesq.com

Amit Kumar, Esq.
*Managing Attorney*
ADMITTED IN NY & NJ
Email: akumar@cafaroesq.com

Andrew S. Buzin, Esq.
*Of Counsel*
ADMITTED IN NY, FL & DC



**LAW OFFICES OF WILLIAM CAFARO**

108 West 39th Street, Suite 602
New York, New York 10018
Telephone: 212.583.7400
Facsimile: 212.583.7401
*www.cafaroesq.com*

Louis M. Leon, Esq.
*Associate*
ADMITTED IN NY
Email: lleon@cafaroesq.com

Matthew S. Blum, Esq.
*Of Counsel*
ADMITTED IN NY
Email: mblum@cafaroesq.com

May 23, 2024

***Via ECF***
Hon. Eric N. Vitaliano, U.S.D.J
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

          Re:    Singh v. Flag Development LLC
                   Case No.: 23-cv-6933

Your Honor:

      This is a request for approval of the Settlement Agreement[1] in the above Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") action. *See, Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). The fully executed Settlement and Release Agreement ("Agreement") appended as **Exhibit 1**.

**I.    Background and Claims**

      According to the Plaintiff, the Defendants own and operate a construction company in New York City. According to Mr. Singh he worked for the Defendants from on or about July 5, 2021 until on or about December 14, 2022. Mr. Singh alleges that his job duties included, but were not limited to, mixing cement, loading and unloading materials, cutting wood and putting up sheet rock.

      According to his best recollections, as an employee of Defendants, Mr. Singh alleges that he worked 43.75 hours per week and was paid $24.00 per hour for hours worked up to 40 hours and was not paid any wages beyond that. Plaintiff also claimed that he did not receive wage statements which showed the number of hours he worked per week. Given these claims, Mr. Singh filed a complaint for violations under the FLSA and NYLL.

---

[1] This letter is tendered pursuant to Rule 408 of the Federal Rules of Evidence and § 4547 of the C.P.L.R., with the express understanding that no part hereof or any document submitted herewith may be utilized for any purpose if the Agreement is not approved and litigation must go forward, nor may any of the content or any related documents be used for any purpose except to enforce the Agreement.

The Defendants vehemently dispute the Plaintiff's claims, as to any alleged wrongdoing, including alleged underpayments, and alleged wage statement violations. In challenging Mr. Singh's claims, the Defendants raised various defenses and put forth pages of documents which they contend contradict the Plaintiff's claims including, the dates worked, the hours worked, and the amounts paid.

## II.     The Settlement Reached Between the Parties

According to his best recollections, the Plaintiff's claims are worth approximately $27,174.43, which is inclusive of all liquidated damages, statutory damages, and prejudgment interest to date. Therefore, the settlement of $20,000.00, the Plaintiff is recovering approximately **73.6%** of Plaintiff's full damages in this case, *inclusive of liquidated and statutory damages*.

Plaintiff believes that the $20,000.00 settlement amount is a fair compromise to resolve this case without further litigation, and without subjecting the parties to the time and expense of ongoing litigation. While Plaintiff was confident that he would be able to challenge the Defendants' inferences successfully, the Plaintiff is uncomfortable testifying in a formal setting. If his testimony had been rejected by the trier of fact, his recovery could be significantly minimized. Also, each settling party is represented by counsel experienced in wage and hour practice. Moreover, the settlement agreement contains a release limited to wage and hour causes of action and does not contain any confidentiality provisions. *See*, **Exhibit 1**. Moreover, the Agreement contains a mutual non-disparagement clause which has a carve out for the Parties to make truthful statements concerning the terms of the Settlement Agreement and regarding their experiences litigating this matter. *Id.* Similar non-disparagement clauses have been approved by Courts in this district. *See, e.g. Horta v. Kings Logistics, LLC*, 2023 U.S. Dist. LEXIS 116262, at *23-24 (E.D.N.Y. July 5, 2023).

The settlement agreement reflects a reasonable compromise of the disputed issues and any actual or potential claims in the totality of the circumstances. In addition, the parties believe that the certainty of settlement and is better than the uncertain outcome of protracted litigation, and Plaintiff prefers to receive his proceeds without the inevitable delay and significant risks that continued litigation would entail.

## III.    The Court Should Find the Proposed Settlement Fair and Reasonable

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc*., No. 11–0529–WS–B, 2013 WL 593500, at *3 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig*., No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is an adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought

about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-CV-86, 2008 WL 724155, at *1 (E.D.N.Y. Mar. 13, 2008).

In determining whether the proposed settlement is fair and reasonable, a court should consider the totality of the circumstances, including the following factors: (1) the Plaintiffs' range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether "the settlement agreement is the product of arm's-length bargaining between experienced counsel"; and (5) the possibility of fraud or collusion. *Wolinsky*, supra at 335.

*Plaintiff's Range of Possible Recovery*

If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the potential outcome. *Morris v. Affinity Health Plan*, 859 F.Supp.2d 611, 620 (S.D.N.Y. 2012). In weighing the risks of establishing liability and damages, the Court "must only weigh the likelihood of success by the Plaintiff…against the relief offered by the Settlement." *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *8 (S.D.N.Y. Apr. 16, 2012). Here, while Plaintiff alleges entitlement to damages, Defendants aver that she was properly compensated, and therefore not entitled to any damages whatsoever.

The settlement represents approximately **73.6%** of the Plaintiff's full damages in this case, *inclusive of liquidated and statutory damages*. In light of the totality of the circumstances, the settlement represents a reasonable compromise of the *bona fide* dispute in this matter. The settlement eliminates risks and ensures the Plaintiff will receive a meaningful amount of wages due even after paying the legal fee. *See, Rodriguez-Hernandez v. K Bread & Co.*, No. 15-cv-6848 (KBF), 2017 U.S. Dist. LEXIS 78034, at *10 (S.D.N.Y. May 23, 2017) (approving a settlement of 26% of potential damages given "bona fide disputes" between the parties and litigation risks).

*Avoidance of Anticipated Burdens and Expenses*

The settlement agreement avoids anticipated burdens in this action. Specifically, it avoids the time and expense of a jury trial. Moreover, as stated above, Mr. Singh is uncomfortable testifying in Court, if his testimony isn't believed, it is likely that a trier of fact would reduce his reward. In light of the totality of the circumstances, the Settlement Agreement represents a reasonable compromise of the *bona fide* disputes in this matter. The settlement eliminates risks and ensures that Plaintiff will recover most of his damages within thirty (30) days of the Court's approval.

*Litigation Risks*

Importantly, Plaintiff's maximum claimed recovery would be far from inevitable had this case proceeded to trial. If the Defendants' evidence was taken as true, they would substantially reduce (or even eliminate) the Plaintiff's recovery. This makes the amount of post-trial recovery uncertain. Settlement permits the Plaintiff to avoid the risk of obtaining no recovery or substantially reduced recovery at trial. *See, Gomez v. Bogopa Madison LLC*, No. 17-CV-5006 (RA), 2017 U.S. Dist. LEXIS 211003, at *4-5 (S.D.N.Y. Dec. 21, 2017).

*Whether the Settlement Agreement is the Product of Arm's-Length Bargaining*

A "presumption of fairness, adequacy and reasonableness may attach to a settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (internal quotations omitted). The Parties engaged in discovery and participated in an arm's length settlement discussions between counsel. Because the settlement involves a clear and *bona fide* wage dispute in contested litigation, which was resolved through an arm's-length process, it should be granted judicial approval.

*Possibility of Fraud or Collusion*

There is no possibility that this settlement was precipitated by reason of "overreaching" by the employer. To the contrary, the settlement was the result of arm's-length negotiations between counsel. The Parties are represented by counsel experienced in wage and hour law who duly counseled their respective clients on the benefits and risks of continued litigation. Moreover, because the Plaintiff left the Defendants' employ prior to the commencement of the action, there has not been, nor could there have been, any undue influence exercised upon Plaintiff in the workplace which could have precipitated this settlement.

"Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 05 CIV 10240, 2007 WL 2230177, at *4 (S.D.N.Y July 27, 2007). Here, the settlement was reached after the Parties were able to fully evaluate the strengths and weaknesses of the claims and defenses presented in the case. At all times, negotiations took place between experienced counsel and were at arm's-length. Thus, there was no fraud or collusion between counsel and as such, the Settlement Agreement should be approved.

**IV    Plaintiff's Counsel is Entitled to a Reasonable Fee of One-Third of the Settlement Amount, Plus Expenses[2]**

Counsel is entitled to reasonable attorneys' fees to compensate for work in recovering this extremely favorable result. Under the retainer agreement, Plaintiff's counsel would be entitled to a one-third fee on the gross recovery of $20,000.00, which equates to $6,666.67, plus out-of-pocket costs and disbursements, which total $662.00, consisting of the following:

| Disbursements | | |
|---|---|---|
| Company | Amount | Description |
| Filing Fee | $    402.00 | Cost for filing in Court |
| Servico | $     80.00 | Service on Corp |
| Gotham | $    180.00 | Service on Ind Defendants |
| Total | $    662.00 | |

---

2 Defendants take no position with respect to Plaintiff's counsel's application for fees.

4

The above are reasonable out of pocket disbursements incurred by attorneys and ordinarily charged to the file. *See LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 763 (2d Cir. 1998). In support of this fee request, the undersigned submits as follows:

Plaintiff's counsel is entitled to reasonable attorneys' fees to compensate for work in recovering alleged withheld compensation in this action. I have personally expended **19.1 hours** in the prosecution of this case. *See,* **Exhibit 2**, Attorney Kumar's time records. "To determine the quality of representation, courts review, among other things, the recovery obtained and the backgrounds of the lawyers involved in the lawsuit." *Taft v. Ackermans*, No. 02 Civ. 7951, 2007 U.S. Dist. LEXIS 9144, at *31 (S.D.N.Y Jan. 31, 2007) (citing *In re Global Crossing and ERISA Litig.*, 225 F.R.D. 436 (S.D.N.Y. 2004)).

I have been an associate with the Law Offices of William Cafaro since 2013 and the Managing Attorney of the firm since 2017. I earned my B.B.A. with dual concentrations in Finance and Computer Information Systems, *cum laude*, from George Washington University in 2005 and a J.D from Hofstra University School of Law in 2012. While in law school, I worked as a law clerk for several employment law firms, including Schwartz & Perry, LLP[3] and Outten & Golden LLP. Also, while in law school, I was a judicial intern for United States Magistrate Judge Ronald L. Ellis (ret.) of the Southern District of New York. I was admitted to practice in the state courts of New York and New Jersey in 2013 and later that same year I was admitted to practice before the Southern and Eastern Districts of New York. I was further admitted to the Federal District Court of New Jersey in 2019 and the Northern District of New York in 2023. Since joining the firm, I have been responsible for actively handling and maintaining a case load which at any given time are in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial or resolution. Further, while working at the firm, I have conducted numerous trials (both bench and before a jury) and arbitrations on behalf of employees in employment law disputes, including wage and hour matters. Moreover, I have been selected as a "Rising Star" by Super Lawyers in the "Employment Litigation" category for the years 2017-2023, inclusive. I was also an officer of the South Asian Bar Association of New York in the years 2018 and 2019 and I am currently a member of the National Employment Lawyers Association – New York Chapter. Moreover, in addition to representing plaintiffs who are current or former employees retained on a contingency fee basis, this Firm also represents some clients who pay hourly rates to the firm in employment litigation matters. Of those clients, depending on each client's respective financial abilities, clients have agreed to compensate the undersigned at rates of $300.00 to $400.00 per hour.

Given my experience, the Plaintiff is requesting that the Court approve me at a rate of $300.00 per hour for my work on this case. This rate is reasonable based on my experience. *See, Yu Wei Cao v. Miyama, Inc.*, 2020 U.S. Dist. LEXIS 149336, at *3-*8 (E.D.N.Y. Aug. 18, 2020) (awarding $300.00 per hour for a senior associate with 5 years' experience).

At the requested rate, the total lodestar is **$5,730.00**. Where, like here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. *See, In re Platinum & Palladium Commodities Litig.*,

---

[3] Now called Schwartz Perry & Heller, LLP

No. 10-CV-3617, 2015 U.S. Dist. LEXIS 98691 (S.D.N.Y. July 7, 2015).  Moreover, a multiplier is used to compensate Plaintiff's counsel for time that is required administering the settlement.  *See, Willix v. Healthfirst, Inc.*, 2011 U.S. Dist. LEXIS 21102, at *19 (E.D.N.Y. Feb. 18, 2011).  Courts have awarded multipliers up to eight (8) times the lodestar and in some cases, they have awarded multipliers that are even higher.  *See, Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 481-82 (S.D.N.Y. 2013) (collecting cases); *see also, Riveras v. Bilboa Rest. Corp.*, No. 17-CV-4430-LTS-BCM, 2018 U.S. Dist. LEXIS 211166, at *4 (S.D.N.Y. Dec. 14, 2018) (approving a lodestar multiplier of 6.7 over Defendants' objection).  Here, the multiplier requested is approximately **1.16** which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. *See Zeltser v. Merrill Lynch & Co.*, 2014 U.S. Dist. LEXIS 135635, at *22-23 (S.D.N.Y. Sep. 23, 2014) (citing *Wal-Mart Stores*, 396 F.3d at 121 ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits.")); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are reviewed.  Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing would have been to build up attorneys' fees.  This would forestall a resolution that could have been achieved earlier.  While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is made, other attorneys who do wage and hour litigation very well might.  Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases.  As FLSA cases have become a significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy.

### V.     Conclusion

For the reasons set forth above the Plaintiff requests that the Court approve the settlement as reflected in the Agreement.  Plaintiff further requests that the Court approve the attorney's fee award and requested costs reflected in the Agreement as fair and reasonable.

Respectfully Submitted,
LAW OFFICE OF WILLIAM CAFARO

_____
By: Amit Kumar, Esq (AK 0822)
*Attorneys for Plaintiffs*
108 West 39th Street, Suite 602
New York, New York 10018

(212) 583-7400
Akumar@CafaroEsq.com

CC:

All counsel of record (Via ECF)